HAROLD A. SHAY, Respondent, v BARBARA C. MITCHELL, as Executrix of WILLIAM B. MITCHELL, Deceased, et al., Appellants.

Fourth Department, January 16, 1976

*Robert J. Kane (J. Paul Brennan* of counsel), for appellants.

*Harris, Beach & Wilcox (Douglas S. Gates* of counsel), for respondent.

WITMER, J. This appeal presents the question whether a contract to buy a parcel of land and the conveyance thereof described by metes and bounds but concluding with the clause, "said parcel of land contains 40 acres of land, more or less", entitles the purchaser to an abatement of the price upon discovering nearly two years after the conveyance that the parcel contained only 31 acres. On the facts of this case we conclude that the purchaser is not entitled to such relief and that his complaint should be dismissed.

In 1967 plaintiff was the president of the Brae Burn Golf Course in Dansville, New York and a stockholder thereof. Immediately west of the golf course and lying between it and New York State Highway Route 36 was property owned by William B. Mitchell and his mother, Joyce K. Mitchell. The corporate owner of the golf course had obtained an option to

buy about 11.7 acres of the Mitchell lands, lying at the northerly side thereat. In the spring of 1967 one Hargrave of New York City contacted plaintiff and requested him to be an intermediary in the purchase of approximately 30 acres of the Mitchell lands adjacent to Route 36 and next south of the acreage optioned to the owner of the golf course. Hargrave stated that he wanted to use the land for a shopping center and he thought it best to have plaintiff negotiate for its purchase. Plaintiff accepted the invitation, especially because he was interested in obtaining a strip of the Mitchell lands, about 300 feet wide, adjacent to the golf course, lying between the golf course and land which Hargrave indicated that he wanted for the shopping center. Plaintiff wanted the 300-foot strip as a buffer area for the protection of the golf course. He testified that he assumed that the Mitchell lands in question comprised 40 acres. Hargrave had orally offered to pay plaintiff $4,000 per acre for the area which he wanted and which he and plaintiff estimated to be 32 acres.

On June 4, 1967 plaintiff obtained an option from the Mitchells to purchase for $100,000 all of their land lying between the golf course and Route 36 and south of the acreage previously optioned to the corporate owner of the golf course. The option contained a description of the property by metes and bounds which concluded with the statement, "Said parcel of land contains 40 acres of land, more or less". That same description was included in the deed to the property later conveyed to plaintiff and in the purchase-money mortgage which he gave to the defendants on the closing. Although none of these documents contained a reference to a price per acre, plaintiff testified that he "was to pay" the Mitchells $2,500 an acre for 40 acres, or $100,000. There was no testimony that the Mitchells agreed to sell on a price per acre basis; indeed, the contrary appears.

Although it may be inferred from the evidence that plaintiff contacted Mr. Mitchell in 1967 with reference to obtaining the option, plaintiff had no other direct dealing with Mitchell. He retained attorney Johnson, who has since moved to Vermont, to act for him with Mr. Mitchell. Mr. Johnson's testimony was a little uncertain, and although the option was executed by the Mitchells to plaintiff on June 4, 1967, he stated that he first contacted Mr. Mitchell in September, 1967 and got the information about the area and boundaries of the property from him at the Mitchell residence. His testimony, important

on the vital issue herein, is that Mr. Mitchell pointed out to him the boundary lines of the property, and that when he asked Mitchell whether he was sure that the property contained 40 acres, Mitchell replied, "Yes". Still, Mr. Johnson was not certain whether he prepared the description for the option or whether Mitchell's attorney did; and he testified that he did not specify the price per acre in the documents because "as far as I knew, everyone seemed satisfied" with respect to the terms of the purchase. He examined the title and advised plaintiff that it was all right.

Surveyor Thomas testified for the plaintiff that in the fall of 1967 plaintiff told him that he had an option to buy the property for the price of $2,500 per acre and asked Thomas to survey 32 acres thereof for Hargrave, although plaintiff was then beginning to suspect that Hargrave was a phony. Plaintiff and Thomas went to the property, walked over it and discussed the proposed shopping center. He testified that plaintiff asked him to survey for him the 300-foot strip adjoining the golf course as well as to survey for Hargrave the remainder of the property for the shopping center. Although his survey showed that the latter area contained only 22 acres, he did not call this deficiency to plaintiff's attention.

Plaintiff last heard from Hargrave in December, 1967. After that, Hargrave disappeared. By its terms the option was granted to extend to March 9, 1968; and plaintiff permitted it to expire unexercised.

Despite the fact that Hargrave had disappeared, the deal with him was off and the option had expired, plaintiff still wanted to acquire the 300-foot parcel, containing about nine acres and which he termed a buffer zone, for the golf course. He attempted to buy it separately at the price of $2,500 per acre but the Mitchells refused to sell on plaintiff's terms. Plaintiff was so anxious to obtain the buffer area, however, that he decided "to take the business risk" of buying the whole property as described in the expired option agreement.

There is no evidence that any part of plaintiff's dealings with Hargrave was brought to the attention of the Mitchells, and it was received in evidence only insofar as it served to establish mistake or misunderstanding on plaintiff's part with respect to the size of the Mitchell property which he bought.

On May 31, 1968, using the same description as contained in the option agreement, plaintiff entered into a contract with the Mitchells to buy the property for the sum of $100,000. The

transaction was closed on July 26, 1968 by deed to plaintiff and by plaintiff's purchase-money mortgage thereon to defendants in the amount of $75,000. Plaintiff knew where the boundary lines were for the property. He took immediate possession, mowed the hay on the property and did quite a bit of work thereon, including leveling two acres, moving the earth and selling it to the adjacent Community Hospital.

Plaintiff testified that in the next year "there was some activity in land around" this property, he had an opportunity to sell it and he wanted a new survey by Mr. Thomas. He received the survey late in 1969 but did not look at it until March, 1970, over a year and a half after the closing. He then first learned, he says, of the acreage deficiency, and he wrote a letter to Mr. Mitchell asking him for a price adjustment. This lawsuit resulted from Mr. Mitchell's refusal.

Defendants called as a witness Mr. Kenneth Winans, a real estate broker. He testified that Mr. Mitchell talked with him at the time of giving the option to plaintiff, and asked Winans to advise him of the value of the property. He appraised it at $100,000 and told Mitchell not to sell it for less. He did not know the exact acreage in the parcel but assumed that it was between 35 and 40 acres, instead of the 31 acres shown by the later survey. He and Mitchell did not discuss value per acre, and in Winans' opinion the exact acreage made no difference. He based his opinion of value on comparable property in the area.

Mrs. Joyce K. Mitchell died before the action was begun, and her son William B. Mitchell was appointed executor of her will. Before the trial of this action, he also died. A representative of each estate has duly appeared as defendant in this action.

Regardless of what may have been in plaintiff's mind with respect to the size of this property, there is no evidence of mistake or misrepresentation with respect thereto on the part of the Mitchells. Except for the testimony of Mr. Johnson that Mitchell assured him that the property contained 40 acres, there is no evidence that acreage was a matter of mutual concern of the parties. That in fact it was not of such concern would seem to be confirmed by the metes and bounds description incorporated in the documents, without reference to price per acre, by the failure of the surveyor to call to plaintiff's attention the acreage which his survey revealed, by plaintiff's

lack of interest therein and the attorney's examination of the title and advice to plaintiff that it was all right. The testimony of Mr. Winans that without regard to acreage content he advised Mitchell not to sell the property for less than $100,000 and plaintiff's testimony that he tried to buy the buffer area, which had no highway frontage, for $2,500 per acre and that Mitchell would not sell it, precludes an inference that. Mitchell was mistaken and thought that he was selling 40 acres at $2,500 per acre. Plaintiff's evidence against the Mitchells is not clear and convincing as required in claims against the estate of a deceased person *(McKeon v Van Slyck,* 223 NY 392, 397; *Matter of Adams,* 1 AD2d 259, 262–263, affd 2 NY2d 796; *Matter of Zimmer,* 77 NYS2d 872, 877, affd 274 App Div 1024; 26 Carmody-Wait 2d, New York. Practice, § 159:27).

The court erred, therefore, in finding that the contract was a product of mutual mistake. The property was bought on a metes and bounds description. There is no claim of fraud on the part of defendants. Under such circumstances, at best the plaintiff could only have the contract rescinded (which he does not seek), rather than have an abatement of the price (see *Barnosky v Petteys,* 49 AD2d 134). Here, however, plaintiff has modified and disposed of part of the property and is in no position to seek rescission, even if he wanted to do so.

Moreover, plaintiff inspected the property, purchased it in gross and got what he bargained for. If the acreage were important to plaintiff at the time of the purchase, he had ample time to verify it by survey, and he also could have specified price per acre in the contract. All of plaintiff's actions show that his present claim is an afterthought. In these circumstances the addition to the description of the words, "Said parcel of land contains 40 acres of land, more or less", does not give the plaintiff cause to complain of the acreage deficiency *(Thayer v Finton,* 108 NY 394; *Hunt v Wall,* 211 App Div 856, affd 240 NY 696; *Bishop v Decker,* 166 App Div 890, affd 221 NY 557; *Miesner v Slaughter,* 1 AD2d 1042; *Sheindelman v Colyer,* 122 App Div 379; and 62 NY Jur, Vendor and Purchaser, § 35).

The judgment should, therefore, be reversed and the complaint dismissed.

CARDAMONE, J.P., SIMONS and MAHONEY, JJ., concur, GOLDMAN, J., not participating.

Judgment reversed on the law and facts, with costs and complaint dismissed.