ARTHUR J. BRAUER et al., Appellants, v CENTRAL TRUST COMPANY, Respondent.

Fourth Department, November 13, 1980

## APPEARANCES OF COUNSEL

*John Manning Regan* for appellants.

*Woods, Oviatt, Gilman, Sturman & Clarke (Percival D. Oviatt of counsel), for respondent.*

### OPINION OF THE COURT

MOULE, J.

Plaintiffs Arthur and Gloria Brauer appeal from a judgment which dismissed their amended complaint, vacated a preliminary injunction prohibiting defendant from enforcing an unsatisfied judgment against them, and awarded defendant costs. Plaintiffs contend that the settlement agreement between the parties should be nullified on the ground of mutual mistake of fact; that attorney's fees paid to defendant under a confession of judgment are unreasonable and constitute a penalty; that attorney's fees paid to defendant under an indemnity agreement are unreasonable; and that subdivision 3 of section 15-501 of the General Obligations Law allows them to avoid the settlement agreement and resume the original obligations between the parties.

On September 26, 1974, Supreme Court, Monroe County (BRISCO, J.), awarded defendant judgments against plaintiffs, based upon two promissory notes, in the amounts of $60,117.79 and $243,058 (Brisco Judgments). In a concurrent action defendant, holder of a $156,000 note of the Xenoc Leasing and Holding Corporation, owned by plaintiff Arthur Brauer, was suing plaintiffs on their guarantee of the note because of default in its payment (Willow Garden debt). Defendant was also being sued by the bankruptcy trustee for King Chan, Inc., of which plaintiff Arthur Brauer was president, for restoration of amounts paid as a statutory bankruptcy preference. Plaintiffs were guarantors of the King Chan debt and, if the preference proceeding succeeded, defendant would have to return the money paid it for the debt.

Plaintiff Arthur Brauer contacted defendant to request that it refrain from filing the Brisco Judgments. The parties engaged in negotiations which resulted in an agreement, dated October 1, 1974 (Settlement Agreement). By the terms of the Settlement Agreement, defendant agreed not to file the Brisco Judgments and to discontinue the suit against plaintiffs on the Willow Garden debt. Plaintiffs agreed to pay the Brisco Judgments in monthly installments of $25,000. Further, plaintiffs signed a confession of judgment for $137,520 in liquidation of the Willow Garden debt, and an indemnity agreement whereby they agreed to indemnify defendant up to $25,000 for

expenses, including attorney's fees, in its defense of the action brought by the trustee in bankruptcy of King Chan, Inc. The Settlement Agreement provided that the $25,000 monthly installment payments would be applied first towards the $60,117.79 Brisco Judgment, then towards the $137,520 confession of judgment, and, lastly, towards the $243,058 Brisco Judgment.

The Settlement Agreement was subsequently modified on April 8, 1975 and June 28, 1976. The first modification reduced plaintiffs' monthly payments to $9,000, with the last $25,000 installment payment received by defendant applied to discharge plaintiffs' liability under the indemnity agreement. The second modification suspended plaintiffs' payment until April, 1977 in return for their promise to drop all claims that the $25,000 applied on the obligation arising out of the indemnity agreement was improperly applied.

In accordance with the agreed priority of application of payments, the $60,117.79 Brisco Judgment was paid by November 13, 1974; the $25,000 due on the indemnity agreement by April 15, 1975; and the $137,520 recited in the confession of judgment by July 16, 1975. All later payments were applied against the $243,058 Brisco Judgment.

In November, 1977, with an unpaid balance of $54,596.57, plaintiffs refused to make further payments. They claimed the $137,520 confession of judgment had been improperly computed, partly because defendant had failed to credit the proceeds of its sale of certain real property (Kibra asset) that plaintiffs had pledged to defendant years earlier as collateral for the Willow Garden debt. This sale, allegedly discovered by plaintiffs in 1977, occurred in October, 1969.

On November 7, 1977 plaintiffs' attorney wrote defendant seeking credit against the Willow Garden debt of the $26,928.26 sale proceeds of the Kibra asset, verification of the $20,000 in attorney's fees included in the confession of judgment, and an accounting for the difference between the $25,-000 plaintiffs paid under the indemnity agreement and the amount which defendant paid out in settlement of the King Chan, Inc. bankruptcy suit. Defendant responded by letter dated November 23, 1977 that, unless the monthly payment due November 15, 1977 was made by December 5, 1977, the Brisco Judgment would be entered. Because of continued refusal to pay, defendant, on December 8, 1977, filed the

$243,058 Brisco Judgment which had an unpaid balance of $54,579.56.

Plaintiffs commenced this action on December 14, 1977 and thereafter obtained a preliminary injunction prohibiting defendant from enforcing the unpaid portion of the Brisco Judgment. The court, after a nonjury trial, found that the proof failed to establish any mistake as to the amounts recited in the confession of judgment; that the sale proceeds of the Kibra asset had been properly credited; that plaintiffs voluntarily paid the $20,000 defendant sought for its attorney's fees, which it had been billed for and paid, and which was not in the nature of a penalty; and that the indemnity agreement was unambiguous in its intent to indemnify defendant for $10,000 in legal fees already incurred, and that plaintiffs were estopped from raising the issue.

Plaintiffs' first contention is that the Settlement Agreement should be set aside on the ground of mutual mistake of fact, since both parties "forgot" the Kibra asset sale proceeds when entering into the agreement. In the alternative, plaintiffs seek credit for overpayment in the amount of $26,928.26, the sale proceeds of the Kibra asset.

It is the general rule that where a mistake in contracting is both mutual and substantial, there is an absence of the requisite "meeting of the minds" to the contract, and the relief will be provided in the form of rescission (*Coffin v City of Brooklyn,* 116 NY 159; *Barnosky v Petteys,* 49 AD2d 134, app dsmd 38 NY2d 826). To obtain relief there must be evidence that the mistake or misrepresentation was a matter of mutual concern of the parties (*Shay v Mitchell,* 50 AD2d 404, affd 40 NY2d 1040).

Defendant's calculations indicate that on January 28, 1969 the balance due on the Willow Garden debt was $111,137.90 and not $82,505.68 as recited in the confession of judgment. They further show that plaintiffs were credited on October 24, 1969 with the proceeds of the Kibra asset sale in the amount of $28,632.22 (a greater amount than the $26,928.26 actually received from the sale), resulting in the balance owing of $82,505.68. Therefore, as explained at trial, the only error in the confession of judgment is that the balance shown due on January 28, 1969 should correctly read the balance due on October 24, 1969; in actuality, plaintiffs benefited by not being charged interest from January 28, 1969 to October 24, 1969 on the actual, and greater, amount due. Plaintiff Arthur Brauer

acknowledges that he saw these calculations prior to signing the confession of judgment.

■ Therefore, the trial court was correct in finding that plaintiffs confessed judgment with full knowledge of the amounts and figures used by defendant in making its computations. Plaintiffs fail to support an assertion of mutual mistake such as to warrant rescission, the mistake being an immaterial one as to the correct date. Because the Kibra sale proceeds were taken into account, plaintiffs did not overpay and are not entitled to any credit.

■ Plaintiffs' second contention is that the $20,000 paid by them under the confession of judgment, to reimburse defendant for its attorney's fees in collecting the Willow Garden debt, is unreasonable. Particularly, they contend that *Matter of First Nat. Bank of East Islip v Brower* (42 NY2d 471) and *Matter of Mead v First Trust & Deposit Co.* (60 AD2d 71) require *quantum meruit* proof of the value of services performed, and they request a review and adjustment of this amount.

*Matter of First Nat. Bank of East Islip v Brower* and *Matter of Mead v First Trust & Deposit Co. (supra)* concerned default judgments where attempts were made to collect attorney's fees computed at a fixed percentage contained in a predetermined contract provision. Both cases held that it is within the authority of the court to require *quantum meruit* proof of the quality and quantity of services performed, rather than mechanically applying a blanket formula contained in an agreement. The public policy consideration was to recognize cases "involving disparity of bargaining power or oppressive practices" and prevent the contractual imposition of a penalty *(Equitable Lbr. Corp. v IPA Land Dev. Corp.,* 38 NY2d 516, 523; *Matter of First Nat. Bank of East Islip v Brower, supra,* p 474). This policy is especially strong in the debtor-creditor situation, where collection is sought on attorney fee clauses routinely inserted into contracts, and the defaulting debtor is unaware of his rights at entry of the judgment and unable to protect himself (see *Matter of Mead v First Trust & Deposit Co., supra; Brownie's Army & Navy Store v E. J. Burke, Inc.,* 72 AD2d 171).

These cases, however, do not warrant disturbing the $20,000 in attorney's fees agreed upon. This is not a situation where, as plaintiff characterizes it, a timid borrower was taken advantage of by a bank's commercially superior bargaining

position. Rather, the proof supports the finding of the trial court that plaintiffs were experienced business people, not unaccustomed to dealing with banks and large sums of money; that they had dealt with this particular bank over a period of years on the subject indebtedness; that the parties dealt at arm's length with plaintiffs, and both were represented and advised by able counsel; and that no misrepresentation, fraud or mistake was established as to the amounts recited in the confession of judgment.

Accordingly, plaintiffs' second contention is without merit. The $20,000 paid by plaintiffs is not a "penalty" requiring review, when such payment was voluntarily made pursuant to the confession of judgment resulting from arm's length negotiations. Furthermore, plaintiffs should not now, under the pretext of mistake and unbalanced bargaining position, after accepting the benefit of the Settlement Agreement, be allowed to challenge the reasonableness of the attorney's fees (see *Belmont Homes v Kreutzer,* 6 AD2d 697, affd 6 NY2d 800).

Plaintiffs' third contention is that they should be able to recover the $10,000 allocated by the bank, under the indemnity agreement dated October 1, 1974, to attorney's fees incurred in settling the trustee's lawsuit.

The relevant clause of the agreement is as follows: "NOW, THEREFORE, the undersigned Indemnitors agree to indemnify, reimburse and pay to Bank an amount not to exceed $25,000.00 for all expenses including attorneys' fees incurred by the Bank in a defense of an action brought by the trustee in bankruptcy of King Chan, Inc. against Bank to recover a preferential and/or fraudulent transfer, or, on account of any judgment recovered by said trustee against Bank, or by reason of any monies paid by Bank by way of settlement and discontinuance of the action brought by the said trustee before judgment." Plaintiffs concede that the $10,000 attorney's fee was reasonable if the agreement was intended to cover both prospective and retrospective legal services, but contend that only prospective application was intended.

There is no language in the agreement to restrict its indemnification to legal expenses incurred after its execution on October 1, 1974. The obvious intent is to indemnify defendant for expenses both past and future. Plaintiffs' argument that defendant could not have intended retroactive application on October 1, 1974, as it was not billed until October 3, 1974,

is specious, for certainly defendant expected to be charged for legal services that had already been provided.

Furthermore, plaintiffs are estopped from raising this issue of attorney's fees paid by defendant. The April, 1975 modification agreement provided that plaintiffs' next $25,000 monthly installment payment would be applied to discharge completely their liability under the indemnity agreement. In the second modification agreement of June, 1976 plaintiffs agreed that the $25,000 was properly applied by defendant, and all claims that it was improperly applied were dropped in exchange for defendant suspending payment from June 28, 1976 until April 15, 1977 on the outstanding balance owed. Having accepted the benefits granted them under the modified agreement, plaintiffs are not now permitted to avoid their obligations thereunder (*Mayor, Aldermen & Commonalty of City of N. Y. v Sonneborn,* 113 NY 423; *Belmont Homes v Kreutzer, supra*).

Also, plaintiffs have failed to support factually their allegation that the basis for the indemnity agreement was illegal. Even if such support had been found, the agreement would be valid, for one may be indemnified for an illegal act which occurred prior to the making of the agreement (*Feuer v Menkes Feuer, Inc.,* 8 AD2d 294).

Plaintiffs' final contention is that subdivision 3 of section 15-501 of the General Obligations Law provides them with a right to elect to avoid the Settlement Agreement and resume the original obligations that existed between the parties.

Before a party is entitled to the relief provided by subdivision 3 of section 15-501 of the General Obligations Law, he must show that the other party has breached or repudiated the accord (*Plant City Steel Corp. v National Mach. Exch.,* 23 NY2d 472). Plaintiffs contend that defendant breached the accord (the Settlement Agreement) by filing the Brisco Judgments, which it had promised not to do. The promise, however, was conditional; the Settlement Agreement stated that defendant would refrain from filing the Brisco Judgments, providing all judgments were paid in full. When plaintiffs stopped their monthly payments in November, 1977, with approximately $54,000 due on the Brisco Judgments, defendant's conditional promise was negated. In filing the judgment defendant did not breach the accord, and plaintiffs' application of the General Obligations Law is erroneous.

Accordingly, the judgment should be affirmed.

DILLON, P. J., CARDAMONE, SIMONS and DOERR, JJ., concur.

Judgment unanimously affirmed, with costs.