C. James CARPENTER, Appellant,

v.

Ellen W. GREENE et al., Appellees.

Supreme Court of Delaware.

Submitted Oct. 17, 1978.

Decided Nov. 21, 1978.

Brian P. Murphy, Middletown, for appellant C. James Carpenter.

Clifford B. Hearn, Jr., Wilmington, for appellee Ellen W. Greene.

Before DUFFY and McNEILLY, JJ., and CHRISTIE, Judge.

DUFFY, Justice:

At issue in this appeal is the proper distribution of the proceeds from a contract of insurance on the life of Andrew A. Greene. The Court of Chancery ordered the insurer, Connecticut Mutual Life Insurance Company, to pay the proceeds to Mr. Greene's children, thus denying the separate claims made by his former wife and by his business partner. The latter then docketed this appeal.

I

The pertinent facts are as follows:

On April 1, 1970, Connecticut Mutual issued an insurance policy on Mr. Greene's life. His business partner, C. James Carpenter, was named as beneficiary. On April 20, 1970, Greene executed a form changing the beneficiary from Carpenter to his wife, Ellen W. Greene.

In the spring of 1974, during a time of marital discord, Greene talked by telephone to an agent of Connecticut Mutual, James R. Stritzinger. Greene had placed the call for the purpose of removing Mrs. Greene as beneficiary and replacing her with his children. Although Stritzinger had witnessed the April 20, 1970 document which made Mrs. Greene the beneficiary, he mistakenly informed Greene that his wife was not the beneficiary, that Carpenter was still the beneficiary. Greene then told Stritzinger to "leave it that way" (or used words to that effect).

Mr. and Mrs. Greene executed a separation agreement on June 18, 1974. The agreement provided for certain other insurance on Greene's life but did not refer to the policy at issue here. The Greenes were divorced on September 20, 1974.

Greene was killed on September 23, 1974. At that time, Mrs. Greene was still the beneficiary of record of the policy.

Mrs. Greene initiated this action against Connecticut Mutual for the proceeds. Connecticut Mutual answered and filed a cross-complaint against Carpenter, who claimed the proceeds on the premise that Greene intended him to be the beneficiary.

The Court of Chancery determined that (a) Mrs. Greene could not recover the proceeds (in this contested case) by relying entirely on her status as beneficiary of record; (b) Carpenter had not proved that Greene intended to make him the beneficiary; and (c) the proceeds should go to Greene's heirs at law, presumed by the Vice Chancellor to be the decedent's children.

II

The appeal presents several issues for decision, the first of which is jurisdictional. Carpenter argues that the Court should refuse to consider the merits of the appeal and determine that the order of the Court of Chancery is void because it granted judgment in favor of persons who are not parties to the litigation, namely the Greene children. But that contention does not take into account the precise nature of Connecticut Mutual's cross-claim.

After Mrs. Greene filed the complaint against Connecticut Mutual on the insurance contract, the insurer answered, cross claimed against Carpenter, and sought to pay the face amount of the policy into Court and take a dismissal. In effect, Connecticut Mutual disclaimed any interest in the proceeds and, as a fiduciary, sought instructions from the Court as to their proper distribution. That is an independent and traditional basis for jurisdiction of an equity Court. See 45 Am.Jur.2d *Interpleader* § 1 (1969). Under these circumstances, the Court of Chancery was not limited solely to a choice between Mrs. Greene and Mr. Carpenter but, rather, had the power to choose neither contesting party and to direct payment to another person or persons. See 2A Appleman, *Insurance Law & Practice* § 1045 (1966). In short, the Court had the power to make the judgment under review and we decline to hold otherwise.

III

As we have noted, the Vice Chancellor also ruled that Mrs. Greene was not entitled to a judgment on the theory that

she was the named beneficiary.[1] Under the Court's analysis, Greene's intention as to his beneficiary was the key issue in this case. And as to Mrs. Greene, the Court concluded that the insured did not intend that she receive the proceeds.

Although Mrs. Greene has not appealed, we affirm the decision, which is amply supported by the evidence, including the testimony of the Connecticut Mutual agent whom Greene called in the spring of 1974 for the explicit purpose of changing the beneficiary from Mrs. Greene, and the testimony of the lawyer who represented Greene in the matrimonial dispute and who said that Greene intended to limit her to what was included in the separation agreement.

## IV

The principal issue on appeal concerns the Vice Chancellor's ruling that Carpenter had not shown by a preponderance of the evidence that the insured had done all that was reasonably possible to do to show his intention to name Carpenter as beneficiary. Cf. *New York Life Ins. Co. v. Cannon, supra.* As we see it, that decision was essentially based on a weighing of the evidence.

■■■ We agree with Carpenter that there is evidence supporting his claim, but that is not the test by which we measure the merits of the appeal. The Trial Judge was obliged to determine, as a fact, wheth-

er Greene intended that Carpenter be his beneficiary at the time of his death. The Court held that Carpenter had not established such an intention by a preponderance of the evidence. Given Carpenter's own testimony that Greene retained him (Carpenter) as beneficiary as an "interim measure," and that he was going to make his future wife the beneficiary,[2] we agree with the holding of the Vice Chancellor that Carpenter's evidence was insufficient to meet the requisite burden of proof. That evidence consisted largely of in-court testimony, which the Trial Judge is in the best position to evaluate, and we accept his conclusions from it. See *Brittingham v. American Dredging Co.*, Del.Supr., 262 A.2d 255 (1970); *Application of Delaware Racing Association*, Del.Supr., 213 A.2d 203 (1965); *Cheff v. Mathes*, Del.Supr., 199 A.2d 548 (1964).

## V

After concluding that neither Mrs. Greene nor Carpenter had established rights to the life insurance proceeds, the Court ordered the proceeds paid to Greene's children. The Vice Chancellor apparently assumed that, under the policy, the proceeds would pass to decedent's heirs in the absence of a valid designation of beneficiary. But there is nothing in the record to support this assumption nor have we been referred to any rule of law which provides such a nexus. On the contrary, the pro-

---

1. Connecticut Mutual's right to strict compliance with the terms of the policy is not an issue in the case. Compare *New York Life Ins. Co. v. Cannon*, 22 Del.Ch. 269, 194 A. 412 (1937).

2. The Vice Chancellor declined to consider the question of whether Carpenter's testimony as to what Greene intended to do with the proceeds was hearsay. There is dicta in the opinion, however, to the effect that the testimony is inadmissible hearsay.

   We disagree, and have treated the testimony as admissible evidence. All or most of the testimony is not hearsay, for several reasons. Some of it does not concern what Greene said to Carpenter, but rather is simply Carpenter's testimony as to his first-hand knowledge of Greene's intention. Since that is not an out-of-court declaration, it is not hearsay. Also, the

testimony does not rest for its value "upon the veracity of the out-of-court declarant." See *McCormick on Evidence* § 249 (2d ed. 1972). The issue is not whether Greene meant what he said about his intention, but whether he said anything at all. For that purpose, Carpenter was present and subject to examination and cross-examination. See *Husband v. Wife*, Del. Supr., 358 A.2d 724 (1976). The fact that Carpenter's testimony undercuts his own claim to the proceeds is an indication of its reliability.

   Even if Carpenter's testimony were hearsay, it was properly admissible as an exception to the exclusionary rule because it concerns the decedent's intent or state of mind. See VI *Wigmore on Evidence* § 1725 (3d ed. 1940); *McCormick supra* §§ 294, 295; accord, *Fed.R. Evid.* 803(3).

ceeds may well be distributable to Greene's estate. See 2A Appleman, *supra* § 1097 (1966); and *Couch on Insurance* § 29:182 (2d ed. 1960).

It follows, therefore, that so much of the order of the Court of Chancery directing payment of the proceeds of the policy to Greene's children or to his heirs must be reversed. The cause is remanded for proceedings not inconsistent with this opinion.