LOUISE KANE, Respondent-Appellant, v UNION MUTUAL LIFE INSURANCE COMPANY, Respondent, and DANIEL A. KANE et al., Appellants-Respondents.

Second Department, December 31, 1981

APPEARANCES OF COUNSEL

*Walsh & Levine (Paul Ambos* of counsel), for appellants-respondents.

*McLaughlin & Stern, Ballen & Miller (Stephen S. Bernstein, Sol I. Sokolsky* and *Irving W. Ballen* of counsel), for respondent-appellant.

OPINION OF THE COURT

*Per Curiam.*

In 1970 a group annuity contract plan was entered into by defendant Union Mutual Life Insurance Company (hereinafter Union Mutual) and Maimonides Medical Center as contract holder. On April 25, 1972 Union Mutual issued its certificate to Alan Kane, M.D., which named him as a participant in that group annuity plan and which

contained the following designation of beneficiaries: "Wife, Mrs. June W. Kane, In *[sic]* the event her death precedes mine equally to Eric P. Kane and Daniel A. Kane as beneficiaries".

The certificate had originally been issued on April 4, 1972 with the same designated beneficiaries, but the name "Kane" had been misspelled as "Kave". In a handwritten note signed Alan A. Kane, a request was made to correct the spelling and as a result Union Mutual issued the corrected certificate dated April 25, 1972, referred to *supra*.

The amended certificate also provided for a change in beneficiary as follows: "BENEFICIARY. A Participant may change his designation of Beneficiary from time to time by filing with the Company, at its Home Office, written notice thereof in any form satisfactory to the Company. Such change of designation of Beneficiary shall take effect as of the date of execution of such notice thereof whether the Participant is living at the time of receipt of such notice or not but without prejudice to the Company on account of any payments made by it before receipt of such notice at its Home Office."

June W. Kane, who was Alan Kane's first wife and the mother of their two sons Eric and Daniel, died on August 23, 1973. Approximately one year after her death Dr. Kane remarried. His new wife was Louise Kane, the plaintiff in this action.

Alan Kane died in February, 1979 and his will, executed March 3, 1976, was admitted to probate in March, 1979. The seventh clause of the will provides: "Any interest or rights I may have with respect to any Keogh Plan and/or Annuity which I shall have created with respect to my earned income, I give, devise and bequeath to my wife, LOUISE E. KANE, to be hers absolutely."

In May, 1979 Louise Kane sent a letter to defendant Union Mutual claiming that she was the beneficiary under the annuity plan and requesting payment under one of its options. Union Mutual replied to Mrs. Kane's request by letter, stating that upon receipt of the decree of probate and a certified copy of the will it would honor her request.

Thereafter counsel for the sons of Dr. Kane by his first wife notified Union Mutual that the sons were the living beneficiaries named in the certificate issued April 25, 1972 by it to Dr. Kane.

Union Mutual then declined to pay either the widow or the sons "because a payment to either * * * may prove to be improper," and it requested that the parties come to a mutual agreement as to how the proceeds should be paid.

Plaintiff commenced this action against Union Mutual and against Eric and Daniel Kane seeking a declaration, *inter alia,* that she was the sole beneficiary of the group annuity contract and had been so designated in her deceased husband's will.

Before serving an answer, the defendants Kane moved (1) to dismiss the complaint pursuant to CPLR 3211 (subd [a], pars 1, 7) contending that a defense was founded upon documentary evidence and that the complaint failed to state a cause of action, and (2) for summary judgment in their favor pursuant to CPLR 3211 and 3212 and EPTL 13-3.2 adjudging that they, and not plaintiff, are the beneficiaries of the annuity in question. The plaintiff cross-moved pursuant to CPLR 3211 (subd [e]) and 3212 for summary judgment in her favor.

Defendant Union Mutual moved pursuant to CPLR 1006 (subd [f]) for an order permitting it to pay the proceeds of the annuity contract into court and thereupon discharging it from liability to any party in whole or part. The plaintiff then cross-moved pursuant to CPLR 2217 (subd [a]) to "consolidate" all the pending motions and pursuant to CPLR 1006 (subd [g]) for an order directing Union Mutual to retain the proceeds to the credit of the action, upon the ground that payment into court might impair option rights existing under the policy.

Special Term determined the motions by granting the cross motion for consolidation, directing Union Mutual to act as a stakeholder of the proceeds and benefits of the annuity subject to the rights of the prevailing party in this action and by denying dismissal to plaintiff under CPLR 3211 and summary judgment to either party under CPLR 3211 and 3212. We modify by granting summary judgment to Eric and Daniel Kane.

The first issue in this case is whether a change in the beneficiary of the annuity contract could be accomplished by Dr. Kane's will. His two sons cite EPTL 13-3.2 for the proposition that "insurance contracts cannot be amended or otherwise affected by testamentary dispositions". The cited statute does not support that claim however. Generally stated, the law of this State is that the designation of a beneficiary to a pension, retirement annuity or other insurance contract is not a testamentary act which must comply with the Statute of Wills (see Study: Braucher, Unification of the Rules Governing Payment of Funds by Institutional Debtors on Death of the Person Entitled and Designations of Beneficiaries to Receive Payment of Such Funds, 1951 Report of NY Law Rev Comm, pp 609, 618). Former section 24-a of the Personal Property Law, the predecessor of EPTL 13-3.2, was recommended by the Law Revision Commission simply to remove "any doubt as to the validity and effectiveness of beneficiary designations" of pension, annuity and insurance contracts and to indicate that such designations were not required to be executed with the formality required by the Statute of Wills (see 1952 Report of NY Law Rev Comm, p 177). Accordingly, the statute provides that the rights of such beneficiaries "shall not be impaired or defeated by any statute or rule of law governing the transfer of property by will, gift or intestacy" (EPTL 13-3.2, subd [a]), provided that the designation is made in writing, is signed by the person making it, and is, so far as here relevant, made in accordance with the rules prescribed for the pension plan or is agreed to by the insurer (EPTL 13-3.2, subd [d], pars [1], [2]). Thus, the statute relied upon by the Kane sons merely provides that such designations of beneficiaries are *not invalid* if accomplished by a document not executed with the formalities required by the Statute of Wills, but it does not answer the question raised here, the converse of that proposition, namely, whether a provision in a will changing the beneficiaries of an insurance contract *is valid*.

The validity of a provision in a will purporting to change the designation of the beneficiary of an annuity depends upon whether such a mode of change is expressly or impliedly authorized by the policy. Although it has been stated

that "the power to change the beneficiary [of an insurance policy] cannot ordinarily be exercised by will" (1951 Report of NY Law Rev Comm, p 620) that statement means only that the provisions in an insurance contract regulating the manner in which a beneficiary may be changed are not "ordinarily" satisfied by a testamentary disposition (see *Pruchnowski v Prudential Ins. Co. of Amer.*, 242 App Div 899, affd 270 NY 530; *Fink v Fink,* 171 NY 616, 625; *Hellenberg v District No. 1 of Ind. Order of B'nai Berith,* 94 NY 580, 586; cf. *Martinelli v Cometti,* 133 Misc 810). This is so because the relevant provisions of the insurance contract either expressly prohibit a change in beneficiary by testamentary disposition or impliedly prevent such mode of change by setting forth conditions to effect the change which cannot be met by a mere statement in a will.

It would appear, therefore, that the question now to be determined should be whether the change of beneficiary requirements of the contract have been met by the clause in Dr. Kane's will. However, certain procedural aspects of this case have the effect of structuring the issue differently.

In the case of *Doss v Kalas* (94 Ariz 247, 250-251) the Supreme Court of Arizona considered the rationale underlying the rule requiring compliance with the provisions of an insurance policy regarding change of beneficiaries and the rule to be applied where the insurer has waived such compliance, stating:

"In McLennan v. McLennan, 29 Ariz. 191, 240 p. 339 (1925) this court stated that if an insurance policy contract provides the method of changing the name of the beneficiary from one person to another, that particular method provided for in the policy contract is exclusive and must be followed strictly, or the attempted change is of no effect. See Cook v. Cook, 17 Cal.2d 639, 111 P.2d 322 (1941). The rationale generally used for such holding is amply illustrated in Stone v. Stephens, 155 Ohio St. 595, 99 N.E.2d 766, 25 A.L.R.2d 992, 996 (1951) quoting from Wannamaker v Stroman, 167 S.C. 484, 166 S.E. 621, 623 (1932):

" ' "To hold that a change in beneficiary may be made by testamentary disposition alone would open up a serious question as to payment of life insurance policies. It is in the

public interest that an insurance company may pay a loss to the beneficiary designated in the policy as promptly after the death of insured as may reasonably be done. If there is uncertainty as to the beneficiary upon the death of insured, in all cases where the right to change the beneficiary had been reserved there would always be a question as to whom the proceeds of the insurance should be paid. If paid to the beneficiary, a will might later be probated designating a different disposition of the fund, and it would be a risk that few companies would be willing to take, * * *." '

"Other authorities, however hold that when the power to make a change of the beneficiary is reserved to the insured by the policy, and the insurer does not demand full compliance with the procedure to effect the change as set out in the policy, the insured may change his beneficiary by a valid will.

" 'We feel that the provisions of this policy setting up the method by which a beneficiary may be designated or changed are for the protection of the insurer, and we do not feel that the technical provisions are placed in the policy to protect the insured against hasty or impetuous action. In the case now before this court, the insurer is no longer a party, and the battle is between possible beneficiaries. Since this is the case, there is no reason to invoke technical provisions designed to protect an insurer against the possibility of double payment. We feel that the clearly manifested intent of the insured should control.' Sears v. Austin, 292 F.2d 690, 693 (9th Cir. 1961).

"We believe that the latter rule is founded on the better reasoning. The provisions in a policy of insurance as to the procedure for making a change of beneficiary are for the benefit of the insurer. If the insurer does not choose to require enforcement thereof, and the rights of the respective claimants alone are before the court, the intent of the insured should govern. Sears v. Austin, supra; Stone v. Stephens, supra (dissenting opinion); Pedron v. Olds, 193 Ark. 1026, 105 S.W.2d 70 (1937); Martinelli v. Cometti, 133 Misc. 810, 234 N.Y.S. 389 (1929)."

In the *Doss v Kalas* case the insurer acquiesced in the change of beneficiaries in the will by paying the proceeds

to the beneficiary named therein rather than to the original beneficiaries. In *Franklin Life Ins. Co. v Mast* (435 F2d 1038) the United States Court of Appeals for the Ninth Circuit, relying upon *Doss v Kalas (supra),* held that by becoming a stakeholder in an interpleader action the insurer waived the need for compliance with the provisions of its policy regarding change of beneficiaries. The law of New York is in accord with that conclusion.

When an insurer becomes a stakeholder, it waives its right to require compliance with the terms of the contract. The contest as to distribution remains solely between the interested claimants and "the court will exercise equity and seek to do what the insured apparently intended and award the fund to the claimant having the strongest claim under existing conditions" *(Matter of Wolfe,* 47 Misc 2d 124, 125; see, also, *Aetna Life Ins. Co. v Sterling,* 15 AD2d 334, affd 11 NY2d 959; *Considine v Considine,* 255 App Div 876; *Greenfield v Massachusetts Mut. Life Ins. Co.,* 253 App Div 51; *Moskowitz v Equitable Life Assur. Soc. of U.S.,* 252 App Div 75).

Under the rule enunciated in the *Doss v Kalas (supra)* and *Franklin Life Ins. Co. v Mast (supra)* cases the remaining issue in the case at bar is whether the will of the decedent "clearly manifested [his] intent" to change the beneficiaries of the annuity policy in question *(Franklin Life Ins. Co. v Mast, supra,* p 1043). In our opinion that test has not been met in this case for the following reasons:

*First,* the language of the testamentary clause does not sufficiently identify, and indicate that it was intended to affect, the subject annuity contract. The testator wrote that he was bequeathing to plaintiff "any interest or rights I may have with respect to any Keogh Plan and/or Annuity which I shall have created with respect to my earned income". At the time he made the will he had no Keogh Plan and one was not created thereafter. He did, however, have the subject group annuity contract at that time, so words of future intent "which I shall have created [by the time this instrument is read]", do not identify that which is already in existence. If Dr. Kane intended to identify the annuity contract that was in existence, he need only have said so. As the Kane sons note, when their father wished to

bequeath something already in existence, he did not use the future perfect tense. Thus, in the third clause of the will he wrote: "I give, devise and bequeath to my sons * * * equally, any and all interest I may have or may ultimately have in the Trust and assets of the Trust *created* by me" (emphasis added). In the year following the execution of the will, a retirement annuity plan was formed by the Coney Island Medical Group. In 1978 testator named plaintiff as the beneficiary of that plan. It is reasonable to assume, as the sons contend, that at the time he drew his will, Dr. Kane knew that such a retirement plan would be created in the future, and that it was that future annuity which he wished to bequeath to plaintiff.

*Second,* in 1974, the year following the execution of the will, testator changed the designated beneficiaries on two other insurance policies which he held from his sons to the plaintiff. Had he intended to change the beneficiary on the instant annuity contract, as plaintiff contends his will purports to do, he could easily have done so when he was changing the designated beneficiaries on the two other policies. The only logical inference to be drawn from his failure to do so is that Dr. Kane did not intend to change the beneficiary on the subject contract. Manifestly he was familiar with the proper procedure because when he received the first certificate on the subject annuity contract, the names of the designated beneficiaries were misspelled. He wrote a note to one H. Grubel, who was listed as the person to be contacted and to whom testator had sent the first designation of beneficiary, asking that the spelling be corrected. Testator did not thereafter communicate — orally or in writing — with Grubel about any further change in the designated beneficiary.

In sum, the evidence leads to the conclusion that if Dr. Kane had intended to change the beneficiaries of the instant annuity contract he would have done so in a written *inter vivos* communication to Union Mutual rather than in his will. He was scrupulously careful to change the beneficiaries of two other insurance policies when that was his intended purpose. No physical or other disability intervened between the writing of the will and the date of his death to prevent Dr. Kane from complying with the policy

provisions by sending a written notice of his intention to Union Mutual. His failure to do so must be read as a clear intention not to effectuate a change in the beneficiary of the instant policy.

Accordingly the order should be modified by granting the motion of Eric and Daniel Kane for summary judgment pursuant to CPLR 3211 (subd [c]) and 3212 and declaring that they are entitled to the proceeds of the insurance in question as the surviving beneficiaries named in certificate No. 01-0-10046-9 of Group Annuity Contract No. 90111 issued by defendant Union Mutual, and defendant Union Mutual should be directed to pay said proceeds to the sons subject to their option rights under the policy.

DAMIANI, J. (dissenting). I concur with my brethren that when defendant Union Mutual became a stakeholder it waived the necessity of compliance with the change of beneficiary provisions of the annuity policy and that accordingly the issue to be determined here only concerns whether the testator intended to change the beneficiaries of that annuity in his will. The majority has concluded that Dr. Kane did not intend to change the beneficiaries of the policy in question. The issue of Dr. Kane's intent is presented here in the context of motions for summary judgment and accordingly such relief can only be granted to plaintiff or to defendants Kane if it can be said that the testator's intent can be ascertained from this record *"as a matter of law"* (CPLR 3212, subd [b], emphasis added).

In my view the relevant provision of the will contains an ambiguity which requires a trial on the issue of Dr. Kane's intent. The seventh clause thereof provides in relevant part that Dr. Kane bequeathed to the plaintiff "[a]ny interest or rights I may have with respect to *any* * * * Annuity which *I shall have created* with respect to my earned income" (emphasis added). The defendants Kane argue, and the majority holds, that this bequest refers only to an annuity created after the will was written because it is stated in the future perfect tense ("which I shall have created") and thereby uses "words of future intent * * * [which] do not identify that which is already in existence."

Gramatically the future perfect tense is used to indicate that an action or state is to be viewed as completed in

relation to a specified time in the future (see IV Oxford English Dictionary, p 627; Webster's Third New International Dictionary, p 926; Webster's New World Dictionary of the American Language, p 589). It does not, however, necessarily indicate that the action referred to is to both *commence* and end after the words are spoken or written. Thus, if I were to say that "by the time I retire I shall have written 100 formal judicial opinions," the one to whom I spoke would ordinarily understand me to mean that I expected that during my tenure as a Judge, both before and after I spoke, I would write a total of 100 such opinions. Similarly, when Dr. Kane wrote that he was bequeathing plaintiff any annuity which "I shall have created," a reader of his will could reasonably understand him to mean that he intended her to have any annuity he created during his lifetime. Not every testator is a grammarian. Perhaps by using the word "shall" Dr. Kane intended to indicate futurity, that is he might, as the majority has held, have intended to refer only to an annuity created after he wrote his will. If that was his meaning, however, why did he use the adjective "any" in connection with the word "annuity"? Perhaps, as I believe the will can be read, he meant any such annuity created during his lifetime.

In short, it is my opinion that it cannot be said, as a matter of law, precisely what Dr. Kane intended. The clause is ambiguous and Special Term properly denied summary judgment to both parties. There should be a trial at which the draftsman of the will can be called to testify as to the testator's instructions and any other available evidence as to intent can be adduced.

Finally, in this regard it must be stated that the second reason given by the majority for granting summary judgment to the defendants Kane again does not pursuade me that such relief should be granted as a matter of law. The second argument in the majority opinion is that because Dr. Kane knew how to, but did not, change the beneficiary of the subject annuity during his lifetime, he did not intend to do so by his will. Often clauses in wills are written as safety measures to insure that if the testator neglected to make some disposition of his property in his lifetime, his intention would nevertheless be carried out after his death.

Similarly, individuals often use a will to accomplish a disposition of property after their death that they did not wish for a multitude of reasons to effect during their life. I think that the fact that Dr. Kane changed some of the beneficiaries of his other policies after he wrote his will is simply another factor to be considered in ascertaining his intent which should be presented to the trier of fact at the trial of this action.

HOPKINS, J. P., LAZER and THOMPSON, JJ., concur; DAMIANI, J., dissents and votes to affirm the order insofar as appealed from, with an opinion.

Order of the Supreme Court, Kings County, dated April 23, 1980, modified, on the law, by deleting the first decretal paragraph thereof and substituting therefor the following: "Summary judgment is granted to the defendants Kane pursuant to CPLR 3211 (subd [c]) and 3212 and it is declared that said defendants are entitled to the proceeds of the insurance in question as the surviving beneficiaries named in certificate No. 01-0-10046-9 of Group Annuity Contract No. 90111 issued by defendant Union Mutual Insurance Company, and defendant Union Mutual is directed to pay said proceeds to defendants Kane, subject to their option rights under the policy." As so modified, order affirmed insofar as appealed from, without costs or disbursements.