[661 NYS2d 625]

CHRISTINE B. MCCARTHY, Formerly Known as CHRISTINE KAP-CAR, Respondent, v AETNA LIFE INSURANCE COMPANY, Defendant and Interpleader Plaintiff. EMIL S. KAPCAR, Interpleaded Defendant-Appellant.

First Department, August 14, 1997

## APPEARANCES OF COUNSEL

*Michael M. Eisenberg* of counsel (*Richard C. Reiner*, attorney), for respondent.

*David L. Pennington* of counsel (*Victor R. Moritz* on the brief; *Harvey, Pennington, Herting & Renneisen, L. L. C.*, attorneys), for interpleaded defendant-appellant.

## OPINION OF THE COURT

Tom, J.

The issue on appeal is whether, under the narrow circumstances of this case, the insured may change the designation of beneficiary on a life insurance policy, nunc pro tunc, by means of a testamentary disposition when the insurance company, by paying the proceeds of the policy to the court, has waived technical compliance with its change of beneficiary requirements.

The relevant facts are essentially undisputed. This is a tragic case in which the insured, while still a young man, and shortly after his 1972 marriage to plaintiff, was diagnosed in 1973 as suffering from multiple sclerosis. During his employment the insured had been provided with life insurance coverage issued by defendant Aetna Life Insurance Company with a 1973 effective date. On the enrollment card, he designated his then-wife, plaintiff, to be the beneficiary. The insured retained the power to change the designation of beneficiary, but no change of beneficiary was ever filed with the carrier.

As a result of his illness, the insured soon developed severe tremors and underwent an operation on his brain to alleviate

this condition. In 1974, the insured started to lose his sight, and was certified to be medically blind shortly thereafter. His marriage, which had been entered into in the State of Virginia, deteriorated along with his physical health, and he had to move into his father's Pennsylvania home in 1977. Although the insured's marital separation was not formalized into a divorce decree until 1978, the father, after the son moved in with him, assumed exclusive responsibility for the care of his son. During the next seven years, the father cared for and attended to the needs of his bedridden son, who was a quadriplegic at the time of death.

The parties' separation agreement dated February 27, 1978, governed by Virginia law, was incorporated into the divorce decree. It provided for a complete property settlement, which has relevant features. Not only did the insured specifically not make any provision for plaintiff that was to survive the divorce, but plaintiff agreed to pay the insured alimony for a four-year period. It appears from the record that at some point the insured was required to commence litigation to enforce compliance with this provision. The insured agreed to assume responsibility for all of his medical costs, and each party relinquished all rights, title and interests against the other party. The intent of the insured to deprive his ex-wife of any financial benefits was manifested more clearly in the 1977 last will, which was holographically prepared, apparently without the advice of counsel. This will specifically revoked a prior will bequeathing the estate to plaintiff, and now bequeathed to his father all of his assets, specifically including all insurance benefits. The will was probated in the State of Pennsylvania. Its provisions are not challenged, excepting the effectiveness of disposition of the insurance policy, and we give the decree of the Pennsylvania court full force and effect insofar as such is consistent with the relevant State insurance law.

Upon the death of the insured in 1984, plaintiff (since remarried), as the beneficiary of record, and the insured's father, Emil Kapcar, each made a claim upon Aetna for the proceeds of the policy. Aetna paid the money into the court and plaintiff commenced the instant action against Aetna which then interpleaded Emil Kapcar.

▮ The Civil Court held that the plaintiff was entitled to the policy proceeds. The Appellate Term (Parness, J., dissenting), affirmed the decision of the Civil Court, essentially for the reasons stated by the Civil Court, on grounds including, *inter alia*, that plaintiff was the beneficiary designated in the policy

application by decedent prior to his death, and that the insured had not taken affirmative steps to do all that he reasonably could have done to effect a change in the designated beneficiary of the policy prior to his death. Interpleaded defendant Kapcar appeals, by leave of the Appellate Term, the decision and order of the Appellate Term, and we now reverse.

In the group life insurance policy issued by Aetna, the terms explicitly provide that: "This policy shall be construed in accordance with the laws of Delaware, where it is delivered".

█ We would give effect to the choice of law provision in the insurance contract itself to determine a material term going to the heart of that contract, to wit, the enforceability of the technical procedures for changing the designation of beneficiary. By arguing for the applicability of Pennsylvania law to govern the insurance law issue, plaintiff and the dissent misconstrue the limited applicability of Pennsylvania's probate law regarding a testamentary instrument executed in that State for a Pennsylvania resident. Pennsylvania insurance law would not operate to govern interpretation of an insurance contract, such as the one before us, which has no nexus with that State, rendering irrelevant plaintiff's reliance on *Carruthers v $21,000* (290 Pa Super 54, 434 A2d 125). We respectfully part issue with the dissent on this point. Further, the insurance policy unequivocally provides that the laws of Delaware shall govern.

█ Delaware case law, albeit in a different factual context, has allowed for a challenge by a claimant to the payment of life insurance proceeds under contested circumstances in which the designated beneficiary could not rely entirely on her status as the beneficiary of record (*Carpenter v Greene*, 396 A2d 150 [Del]). The Delaware Supreme Court in *Carpenter* held that the decedent's intent was a controlling factor, under the circumstances of that case, in the determination of the rightful beneficiary of decedent's life insurance policy. The dissent acknowledges that in *Carpenter* the focal point was the decedent's intention to name another beneficiary of the policy proceeds. By analogy, plaintiff herein would not be entitled as a matter of law to the proceeds of this policy under circumstances where the manifest intentions of the insured, rather than the fact of a prior designation of beneficiary, became the analytical focus by virtue of the carrier's waiver of strict compliance with policy terms governing disposition of the proceeds.

Even based on the law of New York, under the narrow circumstances of this case, we could reach the same conclusion

without diluting the sound reasoning otherwise requiring strict adherence to policy procedures for changing beneficiaries (*see,* EPTL 13-3.2). New York has judicially adopted (*see, Kane v Union Mut. Life Ins. Co.,* 84 AD2d 148, *appeal dismissed* 57 NY2d 956; *Aetna Life Ins. Co. v Sterling,* 15 AD2d 334, *affd* 11 NY2d 959; *Considine v Considine,* 255 App Div 876) an equitable principle recognized by other States (*see, Franklin Life Ins. Co. v Mast,* 435 F2d 1038; *Sears v Austin,* 292 F2d 690, 693, *cert denied* 368 US 929; *Doss v Kalas,* 94 Ariz 247, 383 P2d 169) when the insured retains the right to change beneficiaries (*cf., Kornacki v Mutual Life Ins. Co.,* 195 AD2d 847 [when insured tried to change designation of beneficiary, he lacked the power to do so; his uncle was the "rightsholder" so empowered]), allowing for noncompliance with the policy requirements for changing designations of beneficiaries. The policy in this case provides that a change in beneficiary must be made in writing and that the form is to be filed with the carrier. The insurance policy's procedure for doing so is designed to protect the interest of the carrier from multiple inconsistent claims, but strict compliance with such may be waived by the carrier (*Kane v Union Mut. Life Ins. Co., supra*). By not contesting the obligation to pay a beneficiary, manifested by surrendering the proceeds for court-ordered disbursement, so that only the rights of the respective claimants are before the court, the carrier may be deemed to have abandoned its insistence on technical compliance with these procedures (*Kane v Union Mut. Life Ins. Co., supra,* at 154; *Aetna Life Ins. Co. v Sterling, supra,* at 335; *cf., Cook v Aetna Life Ins. Co.,* 166 AD2d 895). While the dissent contends that we are making a "new contract[ ] for the parties", in this case the precise point is that, when one party waives the method of amending a term of the contract, we may inquire into whether the other party, now deceased, took steps to amend the effect of that term. Then, the intent of the insured, *if sufficiently* evidenced, may prevail over the technical designation in the policy. The point is critical to this appeal, and on this basis we respectfully disagree with the dissent's characterization that "the result in this case should be determined by the provisions in the insurance contract". Rather, the result, under these narrow circumstances, should flow from the persuasiveness of the evidence that the insured intended to deprive his wife of the benefits of the policy.

A will, duly admitted to probate, clearly manifesting the insured's intent, especially when supported by corroborative

documentation evincing the insured's intent, may effectively change the beneficiary of the policy under appropriate circumstances (*compare, Franklin Life Ins. Co. v Mast, supra,* at 1043, *with Matter of Jaccoma,* 142 AD2d 875, *lv denied* 73 NY2d 703 [employer providing insurance did not waive rights of strict compliance; hence, testamentary disposition was irrelevant]).

This equitable approach replaced a prior, more exacting, "substantial compliance" rule that required the insured to do all in his or her power to comply with the procedure (*see,* discussion in *Franklin Life, supra*). This Court had required evidence of some affirmative manifestation of the intent, but recognized that the court should decide between rival claimants on the basis of which one the deceased would have preferred to receive the proceeds (*Aetna Life Ins. Co. v Sterling, supra*), while leaving the adequacy of the proof to be determined in each case. Although the insured in one case took extensive steps to comply with the policy's procedure, those factual circumstances were sufficient for, but not necessary to, the court's ruling validating the changed designation (*Cable v Prudential Ins. Co.,* 89 AD2d 636; *accord, Lopez v Massachusetts Mut. Life Ins. Co.,* 170 AD2d 583). In *Cable,* the Third Department, in dicta, noted that the insured had done all that was possible to effectuate the change in the policy. This is a superimposition on the basic equitable principle, and is inconsistent with the more flexible posture we adopted in *Aetna Life (supra*). This more flexible approach, requiring only evidence of *manifest* intent, rather than evidence that the insured had taken all possible steps, has been followed in *Kane v Union Mut. Life Ins. Co.* (84 AD2d 148, *appeal dismissed* 57 NY2d 956, citing *Franklin Life Ins. Co. v Mast, supra*; *Sears v Austin, supra,* at 693; *Doss v Kalas, supra*) and more recently, by analogy, in *Matter of Morse* (150 Misc 2d 415 [the will sufficiently manifested the insured's intent—"the paramount factor to be ascertained"—to change the designation of beneficiary for death benefits in an annuity]). *Manifest* intent would require some steps beyond a statement, uttered during the decedent's lifetime, of *mere* intent. We emphasize the distinction, but allow for the manifestation of intent to be demonstrated by efforts short of all possible steps to change the policy. To this extent, we also respectfully part with the approach favored by the dissent.

Turning to the facts of the present case, the insured's intention to divest his ex-wife of any financial benefit resulting from his life—or his death—could not have been more plainly stated.

In the separation agreement, in the divorce decree, and, finally, in the will, the insured sought to extinguish any benefit which his ex-wife otherwise might have realized.

In the separation agreement, plaintiff specifically waived all rights to "the real, personal and mixed property of the husband * * * or estate of the husband * * * except only such rights as she may have in this agreement". Although the wife's waiver with respect to the insured's property would not necessarily control the disposition of insurance proceeds payable upon his death, insofar as such benefits do not accrue until the death of the insured, nevertheless, the insured's general intent to deprive his ex-wife of any financial benefits arising in connection with him was manifest.*

Plaintiff was no longer living with decedent at the time of the execution of the settlement agreement and the insured continuously lived with his father until the time of his death. As to the will, the insured, after specifically revoking a prior will in favor of plaintiff, bequeathed all of his assets and other property, including "all my * * * insurance benefits", to his father, with residuary bequests to his siblings. Again, the insured, technically, had no insurance "benefits" to bequeath, but insofar as the will reflected an intention to effect disposition of the insured's contractual right to change beneficiaries, it bears on the point in issue. The evidence conclusively supports the finding that the insured at the time of death did not intend for plaintiff to receive the policy proceeds. Further, the evidence is clear that he intended to vest his insurance benefits in a different designated beneficiary—his father. Since the insurance carrier does not demand strict adherence to the

---

* Several jurisdictions even give effect to a complete property settlement set forth in a separation agreement to extinguish the rights of a former spouse/designee to life insurance benefits. (*See generally*, Annotation, *Property Settlement Agreement as Affecting Divorced Spouse's Right to Recover as Named Beneficiary Under Former Spouse's Life Insurance Policy*, 31 ALR4th 59, 64-65 § 7 [a].) Even in jurisdictions where the separation agreement does not, per se, effect a change in beneficiaries (*see generally, id.*, § 7 [b]), often rulings in favor of the former spouse/designee have either turned on additional evidence that the decedent had not intended to change the beneficiary to the particular policy (*see generally, ibid.*; *Davis v Davis*, 301 So 2d 154 [Fla]; *Pate v Citizens & S. Natl. Bank*, 203 Ga 442, 47 SE2d 277), or that the insurer had not waived its right to require strict adherence to formal requirements to change the designation of beneficiary, or that there was an absence of any evidence that the insured had intended to deprive the ex-spouse of insurance benefits (*Gnekow v Metropolitan Life Ins. Co.*, 108 SW2d 621 [Mo]). These latter cases, of course, are distinguishable in these regards from the present case.

company's method for doing so, the potential bar to the effective change has been removed and we are free to exercise our equitable jurisdiction to give effect to the insured's manifest intent.

Accordingly, the order of the Appellate Term of the Supreme Court, First Department, entered August 10, 1995, which affirmed an order and judgment (one paper) of the Civil Court, New York County (Sheila Abdus-Salaam, J.), entered October 18, 1993, after a nonjury trial, in favor of plaintiff, directing that the proceeds of a life insurance policy be paid to plaintiff, should be reversed, on the law and facts, without costs, and the interpleader plaintiff is directed to pay the proceeds plus interest to interpleaded defendant-appellant.

ANDRIAS, J. (dissenting). While it is clear that the result in this case should be determined by the provisions in the insurance contract, which provides that the "policy shall be construed in accordance with the laws of Delaware", neither the law of New York, the situs of the present lawsuit, nor the law of Pennsylvania, where the insured died and his will was probated, would alter the outcome.

The majority opinion fairly states the facts in this unfortunate case. In 1973, while married to plaintiff, the insured designated her as the beneficiary of a group life insurance policy issued by Aetna Life Insurance Company.

In 1977, although not legally separated, the deceased was residing in Pennsylvania with his father. He executed a holographic last will and testament, which revoked a prior will leaving his estate to his wife and bequeathed "all my personal belongings, stock certificates, bank accounts, insurance benefits and any other earthly belongings to my father". The insured died in 1984 at a hospital in Pennsylvania in the vicinity of his father's home where he had been cared for since moving there in 1977. His father, the interpleaded defendant-appellant herein, was appointed executor of the estate pursuant to the terms of the will when it was probated in Pennsylvania. The plaintiff and the deceased also provided in a 1978 separation agreement, which was incorporated into a 1978 Virginia divorce decree, that plaintiff waived all rights to "the real, personal and mixed property of the HUSBAND * * * or estate of the HUSBAND * * * excepting only such rights as she may have under this Agreement."

Although the deceased, despite his debilitating illness, was in communication with his former employer concerning his

disability payments towards the end of his life, it is undisputed that he took no steps to change his beneficiary under the life insurance policy, which contains the following specific provision with respect to changing beneficiaries: "The amount payable by reason of death of an employee shall be paid to the beneficiary designated by the employee. An employee, whether or not employment shall have terminated, may designate a beneficiary or change his designation of beneficiary from time to time by written request filed at the headquarters of the Policyholder or at the Home Office of the Insurance Company."

The question presented is whether the general expressions of intent in the separation agreement and will (there are no specific references to the policy in question) can modify the insurance contract's specific requirement that to "change his designation of beneficiary", one must do so "by written request filed at the headquarters of the Policyholder or at the Home Office of the Insurance Company."

The choice of law issues discussed by the majority are of no import inasmuch as all of these jurisdictions require substantial compliance with the terms of the insurance contract to change beneficiaries. The change must be effected pursuant to the terms of the contract or there must be evidence that the insured took substantial steps with respect to the specific insurance contract to achieve the change of beneficiary. The policy reason for this approach is clear; any other result would involve rank speculation about the intentions of a deceased who is no longer available to speak.

The rule in Delaware is longstanding: to change a designated beneficiary it must be demonstrated that the insured had done all that was reasonably possible to show his intention to name another beneficiary of the policy proceeds (*Carpenter v Greene*, 396 A2d 150, 152 [Del]). The result in *Carpenter v Greene*, depriving the named beneficiary wife of the proceeds, did not alter the general rule. There, the deceased Mr. Greene was involved in a matrimonial dispute and called the insurance company's agent with "the explicit purpose of changing the beneficiary from Mrs. Greene" (*supra*, at 152). He was incorrectly informed by the insurer's agent that his business partner and not Mrs. Greene was the beneficiary and decided to " 'leave it that way' " (*supra*, at 151). The court found that the deceased relied on the insurer's agent and had done all he could reasonably do to effect a change in beneficiary.

In this case, the insured died in Pennsylvania where his will was probated. As noted, the will provided, *inter alia*, that "all

my * * * insurance benefits" should go to his father. Under Pennsylvania law, the general bequest of all insurance in a decedent's will does not change a prior designation of a beneficiary on the policy, absent proof that the decedent had·done all that he reasonably could have done to change the designation (*Carruthers v $21,000*, 290 Pa Super 54, 434 A2d 125). As in New York, the designation of life insurance beneficiary is not a testamentary "conveyance" under Pennsylvania law (20 Pa Cons Stat Annot § 6101 *et seq.*). Similarly, the execution of a comprehensive property settlement agreement is not sufficient to deprive the policy's designated beneficiary of her rights unless the facts established that she expressly waived her rights to the insurance policy's benefits under the agreement (*Equitable Life Assur. Socy. v Stitzel*, 299 Pa Super 199, 203, 445 A2d 523, 525). Here, in plaintiff's separation agreement with the insured, plaintiff merely waived her rights to "the real, personal and mixed property of the HUSBAND * * * or estate of the HUSBAND." There was no reference to insurance or the policy in question.

EPTL 3-5.1 (b) (2) provides that "[t]he intrinsic validity, effect, revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death." Since the insured was domiciled at death in Pennsylvania, his holographic will probated in Pennsylvania during the pendency of this action should be construed in accordance with the law of Pennsylvania. However, even if the law of New York controlled, as the majority contends, the result would not be otherwise. While in New York "it is possible to effect a change of beneficiaries without strict compliance with policy provisions * * * some affirmative act on the part of the insured to accomplish the change is required; *mere intent to make a change is not sufficient.*" (*Hunnell v Hunnell*, 45 AD2d 521, 523, *affd* 37 NY2d 931 [citations omitted and emphasis added].)

*Kane v Union Mut. Life Ins. Co.* (84 AD2d 148, *appeal dismissed* 57 NY2d 956) dealt with the very issue presented here—the power of a will provision to change a designated insurance beneficiary—stating: "The validity of a provision in a will purporting to change the designation of the beneficiary of an annuity depends upon whether such a mode of change is expressly or impliedly authorized by the policy. Although it has been stated that 'the power to change the beneficiary [of an insurance policy] cannot ordinarily be exercised by will'

* * * that statement means only that the provisions in an insurance contract regulating the manner in which a beneficiary may be changed are not 'ordinarily' satisfied by a testamentary disposition * * * This is so because the relevant provisions of the insurance contract either expressly prohibit a change in beneficiary by testamentary disposition or impliedly prevent such mode of change by setting forth conditions to effect the change which cannot be met by a mere statement in a will." (84 AD2d, *supra*, at 151-152 [citations omitted].)

The test is "whether the will of the decedent 'clearly manifested [his] intent' to change the beneficiaries of the annuity policy in question" (*supra*, at 154). The Court held that even though the testator bequeathed to the plaintiff " 'any interest or rights I may have with respect to any Keogh Plan and/or Annuity' ", "the language of the testamentary clause [did] not sufficiently identify, and indicate that it was intended to affect, the subject annuity contract" (*supra*, at 154). In our case, while there is a reference in the holographic will to "all my * * * insurance benefits", there was no reference to the specific policy in question even by words such as "my life insurance policy", etc.

*Aetna Life Ins. Co. v Sterling* (15 AD2d 334, *affd* 11 NY2d 959), relied upon by the majority in support of New York's purported abandonment of a " 'substantial compliance' " rule in favor of an "equitable approach", hardly supports such a proposition; in fact, *Aetna* firmly reiterates that mere intent and general intent to change are insufficient: "It is true that, where no issue exists between the insurer and the claimed beneficiary, the terms or conditions of the policy in regard to change of beneficiary need not be complied with * * *. This does not mean that in any situation where the insurer declines to choose between rival claimants and pays the proceeds into court the court should make a disposition based on which of them the court finds that the deceased would have preferred to receive the proceeds. There must be an act or acts designed for the purpose of making the change, though they may fall short of accomplishing it. *Mere intent is not enough* * * *. Here, the deceased made no effort to change the certificate. What she did was to name a different beneficiary for a different policy, which would replace the certificate. In the light of her acts, *speculation on her general intent is neither profitable nor permissible*." (*Supra*, at 335 [citations omitted and emphasis added].)

It is not our function to make new contracts for the parties, but to enforce the agreement the parties entered into. Accordingly, the order appealed from should be affirmed.

WALLACH and RUBIN, JJ., concur with TOM, J.; SULLIVAN, J. P., and ANDRIAS, J., dissent in a separate opinion by ANDRIAS, J.

Order, Appellate Term, Supreme Court, First Department, entered August 10, 1995, which affirmed an order and judgment (one paper) of the Civil Court, New York County, entered October 18, 1993, reversed, on the law and facts, without costs, and the interpleader plaintiff is directed to pay the proceeds plus interest to interpleaded defendant-appellant.