■ Joseph Riley, Appellant-Respondent, v Life Insurance Company of North America et al., Respondents-Appellants, et al., Defendants.—Levine, J. Cross appeals from an order of the Supreme Court (Prior, Jr., J.), entered February 21, 1989 in Albany County, which, *inter alia,* partially granted plaintiff's motion to dismiss certain affirmative defenses of defendants Life Insurance Company of North America and American Dental Association, and denied said defendants' cross motion for summary judgment dismissing the complaint against them.

In November 1970, defendant Life Insurance Company of North America (hereinafter LINA) and defendant American Dental Association (hereinafter ADA) entered into a written contract, entitled "ADA-3", under which LINA agreed to provide accident and sickness disability insurance benefits to ADA members who elected to enroll. ADA-3 provided basic, short-term disability benefits and two alternative long-term extended benefits options. Plaintiff, a practicing dentist and a member of ADA, enrolled in ADA-3 in 1972 and opted for long-term extended benefits coverage under "Long Term Extended Benefits—Plan II" (hereinafter Plan II). Under Plan II, an insured who was disabled for 60 consecutive months for which basic benefits were payable and whose disability continued beyond 60 such months would receive extended benefits for any additional period of continuous total disability "not to exceed the lifetime of the Insured". The amount of coverage plaintiff purchased was $1,200 per month for both basic and extended benefits.

At some point after November 1976, ADA and LINA distributed a brochure to ADA members purportedly describing the coverage under ADA-3. The brochure stated in block print that renewal was guaranteed under ADA-3. The brochure also stated in part that "once insured your insurance cannot be

reduced or terminated prior to age * * * 65 for coverage under Extended Plan 2 unless you stop paying premiums, retire from active practice, or discontinue membership in the ADA". In 1978, plaintiff increased his coverage for both basic benefits and extended benefits under Plan II to $2,000 a month.

Effective in November 1979, ADA and LINA terminated ADA-3 and entered into a new disability insurance agreement, entitled "ADA-3a" which, inter alia, changed and replaced extended long-term benefit coverage under Plan II. By letter to enrollees dated September 15, 1979, which plaintiff received, ADA described the changes. The letter stated that, under the new policy, plaintiff's extended benefits would only be payable for his lifetime if he became disabled by sickness or accident prior to age 50. If he were to become disabled at age 50 or older, he would only receive benefits to age 65. Plaintiff enrolled under ADA-3a and was issued a certificate of insurance.

In December 1983, at age 61, plaintiff sustained an injury to his right hand and became totally disabled. Subsequently, he was informed by LINA and ADA that he would not receive lifetime benefits under Plan II. Plaintiff then brought this action for breach of contract and declaratory relief to establish his entitlement to lifetime disability benefits under Plan II, primarily relying upon the representations contained in LINA's and ADA's 1976 brochure. LINA and ADA asserted, inter alia, affirmative defenses of estoppel, integration of contract, waiver, failure to state a cause of action and prematurity. Plaintiff moved to dismiss the various affirmative defenses, and ADA and LINA cross-moved for summary judgment dismissing the complaint. Supreme Court denied the cross motion of ADA and LINA for summary judgment, ruling that there were outstanding issues of fact concerning whether plaintiff was entitled to reformation of his disability insurance contract to provide lifetime benefits. The court struck the affirmative defenses of failure to state a cause of action and prematurity, but denied dismissal of the affirmative defenses of estoppel, waiver and parol evidence. These cross appeals ensued.

In our view, the evidence submitted by plaintiff in opposition to the cross motion by LINA and ADA for summary judgment dismissing the complaint was insufficient to raise a triable issue of fact as to whether plaintiff was entitled to reformation. Concededly, the mistake, if any, as to guaranteed lifetime benefits under all circumstances, was unilateral on

plaintiff's part. Therefore, plaintiff had to establish, by clear and convincing evidence, some fraud or inequitable conduct amounting to fraud by ADA and LINA in the *formation* of the contract so that it does not express the true agreement of the parties (see, *Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 219-220; *Leavitt-Berner Tanning Corp. v American Home Assur. Co.*, 129 AD2d 199, 201-202, *lv denied* 70 NY2d 609; 16 NY Jur 2d, Cancellation and Reformation of Instruments, § 48, at 351). Plaintiff's proof clearly failed to meet that burden. The original contract of insurance plaintiff entered into in 1972 (ADA-3) was expressly cancelable at will by LINA or ADA. Plaintiff does not allege that he initially bought ADA-3's extended Plan II coverage under any impression that it guaranteed renewability of lifetime benefits. The brochure he received and claims reliance upon also referred to the possibility of termination of ADA-3 by LINA. In any event, prior to the termination of ADA-3 in 1979, plaintiff did not enter into any new contract of insurance with LINA, but merely increased the amount of maximum disability benefits payable thereunder. Thus, the brochure is not a ground for reformation of the earlier ADA-3 policy contract.

Nor can the brochure constitute a ground for reformation of the insurance contract he later entered into in 1979 (ADA-3a), which replaced ADA-3. The ADA-3a insurance contract was only formed *after* plaintiff received the ADA letter of September 15, 1979. The ADA letter states in clear and unequivocal terms that a new plan was going into effect and that, under it, benefits would cease at age 65 for any disability occurring at age 50 or older. Plaintiff's only rebuttal to this unmistakable notice of the limits of coverage if the disability occurred after he became 50 is that the brochure induced his subjective "belief that any reduction in benefits was inapplicable to him". The letter is not only addressed to him but details the specific, previous Plan II extended benefits he had under ADA-3 and states that the benefits at issue here were to be discontinued and replaced. Had there been any confusion in plaintiff's mind regarding the claimed conflict between the September 15, 1979 ADA letter and the brochure, plaintiff could have availed himself of the invitation in the ADA letter to call the plan administrator, collect. The September 15, 1979 letter not only negates any fraud on the part of LINA or ADA, but also demonstrates that plaintiff's reliance on the earlier brochure was totally unreasonable. It follows from the foregoing that plaintiff has failed to meet the burden of submitting "unequivocal evidence of mutual mistake or fraud"

in the making of ADA-3a, as well as in the formation of ADA-3 *(Chimart Assocs. v Paul,* 66 NY2d 570, 574; *see, Backer Mgt. Corp. v Acme Quilting Co., supra,* at 219-220; *Leavitt-Berner Tanning Corp. v American Home Assur. Co., supra,* at 202).

Since plaintiff has not set forth any evidence in admissible form upon which reformation of any insurance contract to which he was a party could be granted, there should be a reversal and LINA's and ADA's cross motion for summary judgment dismissing the complaint against them should be granted.

Order modified, on the law, without costs, by reversing so much thereof as denied the cross motion of defendants Life Insurance Company of North America and American Dental Association; cross motion granted, summary judgment awarded to said defendants and complaint dismissed; and, as so modified, affirmed. Kane, J. P., Yesawich, Jr., and Levine, JJ., concur.

Casey and Mikoll, JJ., dissent and vote to affirm in a memorandum by Mikoll, J. Mikoll, J. (dissenting). We respectfully dissent. Essentially, plaintiff claims that he entered into ADA-3a based on the unilateral mistake that the fraudulent representations in the brochure were the terms of the policy which would apply to him and that, therefore, the terms of ADA-3a should be reformed to include the terms of the brochure. This brochure was distributed in 1976 by ADA and LINA and described coverage under ADA-3. It stated in block print that renewal was guaranteed under ADA-3 and that under "Long Term Extended Benefits—Plan II", disability caused by accident would be covered for an insured's lifetime. It also stated in part that "once insured your insurance cannot be reduced or terminated prior to age * * * 65 for coverage under Extended Plan 2 unless you stop paying premiums, retire from active practice, or discontinue membership in the ADA". Plaintiff claims that in 1978, relying on the brochure, he increased his maximum benefits to $2,000 a month under both the "Basic Benefits" and Plan II coverage in which he was enrolled under ADA-3.

Effective in November 1979, ADA and LINA entered into a new insurance contract entitled ADA-3a with changed benefits. ADA sent plaintiff and others a letter in September 1979 with the bold print caption: "American Dental Association Income Protection Plan Contract Amendments Effective November 1, 1979". This letter contained 2½ pages detailing the various amendments. However, the lead paragraph stated that

the letter writer was "pleased to inform you of significant improvements in your coverage". Plaintiff asserts that he increased the amount of his coverage, continued his policy and chose not to opt-out in reliance on the representations in the brochure which he claims were false.

In our view, the facts and circumstances alleged satisfy plaintiff's burden of showing by clear and convincing evidence, if believed, fraud or inequitable conduct amounting to fraud in the formation of the new agreement which did not express the intended terms of the new agreement of the parties (see, Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219-220). The misrepresentations in the brochure were clear and the later letter was written in such a way as to lead the reader to accept what was stated in the brochure. Significantly, the letter certainly did not alert the reader that there was such a radical change in the terms as stated in the brochure. In addition, plaintiff was not an attorney or other person expected to be well versed in insurance law.

Accordingly, we would affirm Supreme Court's order.