■ Estate of Frances Hatch, by Theodore M. Ruzow, et al., Respondents-Appellants, v NYCO Minerals, Inc., Appellant-Respondent. [666 NYS2d 296] —Carpinello, J. Cross appeals from an order of the Supreme Court (Viscardi, J.), entered November 5, 1996 in Essex County, which denied defendant's motion for summary judgment dismissing the complaint and denied plaintiffs' cross motion for summary judgment.

The present dispute requires the interpretation of several agreements executed during the 1950s between the parties' predecessors in interest concerning mining properties and mining projects in Essex County. At issue is whether defendant is obligated to continue to pay plaintiffs an annual overriding royalty. Both sides appeal from the denial of their respective motions for summary judgment, each contending that the written documents unambiguously warrant judgment in their favor.

Pursuant to an April 10, 1952 agreement between plaintiffs' predecessor (Willsboro Mining Company) and defendant's predecessor (Cabot Carbon Company), Willsboro transferred to Cabot all of its assets, including a 1951 mineral lease and a processing plant and equipment, in exchange for a cash payment and an "overriding royalty" of minerals "produced and sold" by Cabot. By this 1951 lease, Willsboro had been granted the exclusive right to mine wollastonite, diopside and garnet from specific lands in Essex County.

As contemplated by the April 10, 1952 agreement, the 1951 mineral lease was canceled and replaced with a new mineral lease on April 19, 1952. Pursuant to the 1952 lease, Cabot, as lessee, was granted the exclusive right to mine wollastonite from the lands described in the 1951 lease as well as additional lands in which the lessors had title or mining rights. These lands collectively became known as the Willsboro Mine.

The April 10, 1952 agreement was amended on September 24, 1957 to change the formula by which the overriding royalty would be calculated. The amendment provided for "a total overriding royalty of [$0.60] per ton of wollastonite and diopside produced and shipped * * * and [$0.10] per ton of garnet produced and shipped", subject to a $36,000 annual cap. In referring to the April 10, 1952 agreement, the amendment recites that "Cabot agreed to pay to Willsboro an overriding royalty * * * *on minerals removed from lands in Essex County* * * * *covered by Mineral Leases to Cabot*" (emphasis supplied), specifically identifying the 1951 and 1952 mineral leases.

In 1982, defendant closed the Willsboro Mine and opened the

Lewis Mine, approximately 10 miles away. Despite closure of the Willsboro Mine, plaintiffs and their predecessors continued to receive overriding royalty payments until 1994. In 1994, however, defendant ceased making overriding royalty payments to plaintiffs on the basis that its obligation to do so ended 12 years earlier when it closed the Willsboro Mine. Plaintiffs commenced this action to compel performance of the April 10, 1952 agreement and defendant counterclaimed for return of the overriding royalty payments made between 1982 and 1994.*

For their part, plaintiffs contend that the royalty created by the April 10, 1952 agreement, as amended, was not tied to any specific property; rather, the agreement simply provided that Cabot, as long as it was engaged in the mining, production and processing of wollastonite, diopside and garnet, would pay Willsboro an overriding royalty on all such minerals produced and shipped from whatever source. Defendant claims that a reading of the April 10, 1952 agreement, as amended, plainly establishes that it is only obligated to make overriding royalty payments for minerals extracted from those lands identified in the 1951 and 1952 mineral leases (i.e., from the Willsboro Mine) and because no minerals are now being produced from the Willsboro Mine, plaintiffs are not entitled to any royalty.

The construction and interpretation of an unambiguous written contract is an issue of law within the province of the court, as is the inquiry of whether the writing is ambiguous in the first instance (*see, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162). In the interpretation process, the objective is to determine the parties' intention as derived from the language employed in the contract (*see, Chimart Assocs. v Paul*, 66 NY2d 570, 572; *Teitelbaum Holdings v Gold*, 48 NY2d 51, 56). In this regard, a court is duty-bound to adjudicate the parties' rights according to unambiguous provisions and give words and phrases employed their plain meaning (*see, Sanabria v American Home Assur. Co.*, 68 NY2d 866, 868; *Laba v Carey*, 29 NY2d 302, 308). Moreover, "[t]echnical words are to be interpreted as usually understood by the persons in the profession or business to which they relate, and must be taken in the technical sense unless the context of the instrument or an applicable usage or the surrounding circumstances clearly indicate a different meaning" (22 NY Jur 2d, Contracts, § 242, at 299).

In this case, "the agreement" between the parties consists

* The counterclaim is not at issue on this appeal.

not only of the April 10, 1952 agreement and its September 1957 amendment, but also the 1951 and 1952 mineral leases (*see, Mayo v Royal Ins. Co.*, 242 AD2d 944; *Sbarra v Totolis*, 191 AD2d 867, 870). We find these documents unambiguous and obligate defendant to pay an overriding royalty on minerals removed from the leased lands only.

Inclusion of the phrase "overriding royalty" throughout the documents is dispositive of the parties' intent as this phrase has an unambiguous meaning. An overriding royalty, by definition, is a retained interest in minerals located on specific property that the royalty holder (i.e., the lessee) does not actually own (*see, e.g.,* Annotation, *Right to Partition of Overriding Royalty Interest in Oil & Gas Leasehold*, 58 ALR3d 1052 § 2; 38 Am Jur 2d, Gas and Oil, §§ 177, 195, 197; *see also, N.L. Indus. v GHR Energy Corp.*, 940 F2d 957, 968, *cert denied* 502 US 1032; *Energy Oils v Montana Power Co.*, 626 F2d 731, 733, n 2; *Cox v United States*, 497 F2d 348, 350, n 1, *cert denied* 419 US 1047; *Cameron v Stephenson*, 379 F2d 953, 955; *Wedel v American Elec. Power Serv. Corp.*, 681 NE2d 1122, 1133; *Campbell v NAKO Corp.*, 195 Kan 66, 402 P2d 771). Indeed, Black's Law Dictionary defines an overriding royalty as "[a] retained royalty by a lessee when the property is subleased" (Black's Law Dictionary 1331 [6th ed 1990]).

An overriding royalty, therefore, cannot apply to minerals mined from lands in which a lessee does not have an interest. Here, plaintiffs' retained interest applies to minerals mined from the Willsboro Mine only. Thus, their position that they are entitled to a royalty from minerals produced and shipped by Cabot on lands not covered in the 1951 and 1952 mineral leases (i.e., the Lewis Mine) is inconsistent with the plain meaning of an overriding royalty (*see generally, Mazzola v County of Suffolk*, 143 AD2d 734, 735; *Allied Chem. Corp. v Alpha Portland Indus.*, 58 AD2d 975, 976). Our interpretation of the contractual language is consistent with the language contained in the recital to the 1957 amendment which unequivocally states that Cabot agreed to pay to Willsboro "an overriding royalty * * * on minerals removed from lands in Essex County * * * covered by Mineral Leases to Cabot" (*see, Frenchman & Sweet v Philco Discount Corp.*, 21 AD2d 180, 182 [while a recital is not strictly part of a contract, it may have a material bearing on the construction of the contract]; *Bintz v City of Hornell*, 268 App Div 742, *affd* 295 NY 628; *Industrial Dev. Found. v United States Hoffman Mach. Corp.*, 11 Misc 2d 625, 633, *affd* 8 AD2d 579, *lv denied* 7 NY2d 706). Because the parties' understanding can be gleaned from a

review of these unambiguous documents, the agreements will be enforced according to their terms entitling defendant to summary judgment.

As a final matter, we note that only where an ambiguity is present in a contract may the subsequent conduct of the parties be used to indicate their intent (*see, Town of Pelham v City of Mount Vernon*, 304 NY 15, 23; *see also*, 22 NY Jur 2d, Contracts, §§ 220, 221, at 262-265). Finding, as we do, that the language of the agreements is definite and unambiguous, the doctrine of practical construction will not be applied (*see, id.*).

All other contentions have been reviewed and rejected as meritless.

Cardona, P. J., White, Casey and Spain, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant, by reversing so much thereof as denied defendant's motion for summary judgment; motion granted, summary judgment awarded to defendant and complaint dismissed; and, as so modified, affirmed.